FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 AUG 19 PM 1: 18

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JAMES JACKSON CARSWELL,          )
                                 )
          Petitioner,            )
                                 )
     v.                          )          CV 112-076
                                 )
DONALD BARROW, Warden,[1]        )
                                 )
          Respondent.            )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate incarcerated at Washington State Prison in Davisboro, Georgia,

brought the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the

relevant pleadings, for the reasons set forth below, the Court **REPORTS** and

**RECOMMENDS** that Petitioner's Motion for Additional Supporting Evidence be **DENIED**,

(doc. no. 14), that his § 2254 petition be **DENIED**, that this civil action be **CLOSED**, and that

a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

This case challenges the validity of Petitioner's guilty plea and resulting convictions

in the Superior Court of Columbia County, Georgia. Based on testimony at Petitioner's

sentencing, the state habeas court described the conduct underlying Petitioner's guilty plea and

---

[1]Because Petitioner has been most recently confined at Washington State Prison, Donald Barrow, the Warden there, is hereby substituted as Respondent in this case. See Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts. The **CLERK** is **DIRECTED** to modify the docket accordingly and to mail a copy of this Report and Recommendation to Petitioner at Augusta State Medical Prison, which was the return address provided in his most recent filing.

convictions as follows:

> Petitioner committed the crimes following his contentious divorce. Petitioner had threatened to kill his ex-wife on multiple occasions. [On May 4, 2009,] Petitioner went to her house, broke the door down with an axe, and when she tried to escape in the truck he had left running in the driveway (which contained rubber gloves, rope, duct tape, and a shovel), pointed an Uzi in her face and pulled the trigger. The assault rife jammed, and she was able to escape. Petitioner lay in wait, and, upon law enforcement responding to the scene, Petitioner held two officers at gun point for over two hours.

(Doc. no. 8-3, pp. 2-3 (citations omitted).)

Petitioner was originally charged with burglary, aggravated assault against his ex-wife, two counts of aggravated assault on a law enforcement officer, and possession of a firearm during the commission of a crime. (See doc. no. 8-2, pp. 92, 114-15.) According to Petitioner, his family initially retained attorney Kirk Gilliard to represent him, (see id. at 86), and he fired Mr. Gilliard after eight months, (doc. no. 1, p. 5). Attorney Jeffrey R. Sliz, who ultimately represented Petitioner during plea negotiations and at his guilty plea and sentencing, (see doc. no. 8-2, pp. 92-93, 100-42), testified at Petitioner's state habeas evidentiary hearing that he was retained from the outset, but he initially referred the case to Mr. Gilliard, who was locally based in Augusta, (id. at 58). According to Mr. Sliz, when Mr. Gilliard elected not to represent Petitioner, Mr. Sliz took over the representation. (Id. at 59.)

Mr. Sliz, who had handled over 500 criminal jury trials and thousands of cases resulting in guilty pleas, (id. at 57), negotiated a plea for Petitioner that (1) reduced his single count of burglary to a single count of criminal damage to property; (2) reduced the two counts of aggravated assault on a law enforcement officer to one count of obstruction of a law enforcement officer; and (3) left in place the original charges of aggravated assault on his ex-wife and possession of a firearm during the commission of a crime, (see id. at 92-93, 114-15).

2

Under the terms of the plea agreement, Petitioner would receive a total sentence of twenty years, with a term of imprisonment within the range of five to ten years, and he would be banished from Richmond and Columbia Counties. (See id. at 92-93, 114-16.)

Pursuant to that plea agreement, on January 26, 2010, Petitioner entered a guilty plea in the Superior Court of Columbia County, Georgia, to four counts: (1) criminal damage to property, (2) aggravated assault, (3) obstruction of a law enforcement officer, and, (4) possession of a firearm during the commission of a crime. (Id. at 100-04, 105, 110-19.) On February 9, 2010, the Superior Court sentenced Petitioner to ten years incarceration, ten years probation, banishment from the Augusta Judicial Circuit, and a prohibition on contact with the victim for the duration of his sentence. (Id. at 106.)

Petitioner did not file a direct appeal, but did file a state habeas corpus petition *pro se* in the Superior Court of Calhoun County, Georgia, on October 13, 2010, in which he raised the following claims:

(1)     Mr. Gilliard provided ineffective assistance of counsel by failing to investigate Petitioner's case to secure evidence;

(2)     Mr. Gilliard provided ineffective assistance of counsel by failing to file a demand for speedy trial in order to preserve evidence;

(3)     Mr. Sliz provided ineffective assistance of counsel by

    (a)     failing to investigate Petitioner's case;

    (b)     failing to file a motion to suppress or contest an illegal search and seizure;

    (c)     "coercing" Petitioner's guilty plea; and

    (d)     giving Petitioner erroneous advice about the sentence he would receive;

(4)     his "due process rights" were violated because he was denied bond;

(5)     Mr. Sliz provided ineffective assistance of counsel by failing to "show the Honorable Court" that Petitioner was under the influence of two prescription medications mixed with wine, and that Petitioner did not know the side effects of mixing these substances;

(6)     Mr. Sliz provided ineffective assistance of counsel by "not trying to provide any defense" to Petitioner based on "psychological evidence" that would have shown he was "not in the right state of mind";

(7)     his "due process rights" were violated because he was interrogated without the benefit of counsel and while he was still under the influence of medically prescribed drugs; and

(8)     his "due process rights" were violated because of the "political ties" of the victim and her sister with court officials, which meant that Petitioner could not receive bond or a fair trial and was "compelled to take a plea."

(Doc. no. 8-1, pp. 6-9.)

After holding an evidentiary hearing on May 16, 2011, in which Petitioner represented himself, (see doc. no. 8-2, pp. 1-91), the Superior Court of Calhoun County denied Petitioner's state habeas corpus petition in its entirety on August 14, 2011, (see doc. no. 8-3). Petitioner filed an application for a certificate of probable cause to appeal with the Supreme Court of Georgia on September 14, 2011, which it denied on April 24, 2012. (See doc. no. 8-4.)

Petitioner then timely filed the above-captioned federal petition, in which he raises the following grounds for relief:

(1)     ineffective assistance of counsel by Mr. Gilliard:

        (a)     for failing to meet with Petitioner before his interrogation by law enforcement;

        (b)     for failing to be present at that interrogation;

        (c)     for failing to secure witness testimony;

        (d)     for failing to secure bond; and

4

      (e)     for failing to secure medical records that would have supported Petitioner's defense;

  (2)     ineffective assistance of counsel by Mr. Sliz:

      (a)     for "all[ying]" with Mr. Gilliard, who had been fired;

      (b)     for failing to secure testimony crucial to Petitioner's defense;

      (c)     for pressuring Petitioner and his family to make Petitioner plead guilty by misstating the facts of the plea, causing an unintelligent plea, and for failing to seek a speedy trial or a venue change;

  (3)     denial of a full and fair state habeas hearing; and

  (4)     illegal search and seizure of evidence from Petitioner's home.

(Doc. no. 1, pp. 5-11.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (U.S. 2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (U.S. 2011) (quoting Richter, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Richter, 131 S. Ct. at 786-87 ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.

Moreover, AEDPA mandates a highly deferential standard of review for state court factual determinations. As noted above, with regard to factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. 290, 301 (2010) ("The term 'unreasonable' is no doubt difficult to define. It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (internal citation and punctuation omitted)). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review." (internal quotation marks omitted).

## III.    DISCUSSION

### A.    Federal Habeas Relief Is Not Warranted with Respect to the Ineffective Assistance of Counsel Claims That Were Previously Rejected by the State Habeas Court.

Petitioner claims in Grounds One and Two of his petition that he was provided ineffective assistance of counsel before he entered his guilty plea. The state habeas court rejected all of the claims of ineffective assistance of counsel Petitioner asserted in that proceeding, including the same claims Petitioner now asserts in Grounds One and Two of his federal petition, by applying the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), and determining that Petitioner failed to show either deficient performance or prejudice. (See doc. no. 8-3, pp. 8-13.) As explained in detail below, there is no basis for federal habeas relief on those same claims, especially in light of the twin hurdles to relief imposed by § 2254 and Strickland. Put another way, Petitioner has not presented clear and

convincing evidence to rebut the presumption of correctness afforded the state habeas court's factual findings nor has he shown those factual determinations were unreasonable in light of the evidence presented during the state proceedings. Petitioner has also failed to carry his heavy burden of showing that the state habeas court's legal analysis was contrary to Strickland or that it applied Strickland's deferential standard in an objectively unreasonable manner to Petitioner's claims.

1. **Petitioner Bears a Heavy Burden Under § 2254 and Strickland v. Washington for Showing Entitlement to Federal Habeas Relief Based on Ineffective Assistance of Counsel Claims Previously Rejected by the State Habeas Court.**

A petitioner seeking relief under § 2254 based on a state court's adjudication of his ineffective assistance of counsel claims must clear two hurdles. Petitioner must first show that counsel was constitutionally ineffective under Strickland. Under the first prong of the Strickland standard, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the

circumstances, as [trial] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985); see Brooks v. Comm'r, Ala. Dep't of Corr.,- F.3d-, 10-12073, 2013 WL 3232911, at *9 (11th Cir. June 27, 2013). Under the prejudice prong of Strickland, the petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brooks, 2013 WL 3232911, at *8 (quoting Strickland, 466 U.S. at 694) (internal citation omitted). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012) (*per curiam*). In assessing whether a habeas petitioner has met this standard, the Supreme Court has emphasized the

9

"fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, to succeed in his federal habeas corpus challenge to his state court conviction via a guilty plea entered on the advice of counsel, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

That being the deferential standard for ineffective assistance of counsel claims, Petitioner also bears the even heavier burden of "show[ing] that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. 685 at 699. Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem review is doubly so." Richter, 131 S. Ct. at 788 (quotation marks and citations omitted). Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Id.

Applying these standards to the ineffective assistance of counsel claims in his federal petition that the state habeas court already rejected, Petitioner has not shown that federal habeas relief is warranted.

2. **The State Habeas Court's Decision to Reject the Ineffective Assistance of Counsel Claims with Respect to Mr. Sliz Is Entitled to Deference under AEDPA.**

In subsections (b) and (c) of Ground Two, Petitioner claims that Mr. Sliz provided ineffective assistance of counsel by failing to secure testimony crucial to Petitioner's defense, and by pressuring Petitioner and his family to make Petitioner plead guilty by misstating the facts of the plea and not seeking a speedy trial or a venue change. (Doc. no. 1, p. 6.) The state habeas court rejected these same claims on the merits, concluding Petitioner failed to establish that Mr. Sliz's performance was deficient or prejudicial. (Doc. no. 8-3, pp. 8-13.) Because Petitioner has failed to carry his heavy burden of showing entitlement to federal habeas relief based on the state habeas court's adjudication of these claims, Petitioner's claims in subsections (b) and (c) of Ground Two do not warrant federal habeas relief.

> (i)    *Failure to Secure Testimony and Evidence in Support of Defenses*

Petitioner alleges that Mr. Sliz was ineffective for failure to secure testimony and evidence crucial to his defense. (Doc. no. 1, p. 6.) Rejecting this claim, the state habeas court found that Mr. Sliz "conducted an extensive and constitutionally adequate investigation." (Doc. no. 8-3, p. 11.) The state habeas court also concluded that Mr. Sliz determined not to pursue Petitioner's proffered defenses of voluntary intoxication, because it was not a viable defense, and temporary insanity, because the evidence did not support it. (Id. at 12.) The state habeas court's findings comport with the evidence presented during the state habeas proceedings.

Indeed, as the state habeas court observed, Petitioner did not identify or proffer any evidence that Mr. Sliz did not uncover or show how any such evidence would have affected

Mr. Sliz's advice regarding whether to take a plea. (Id. at 11-12.) Furthermore, the evidentiary record is replete with confirmation that Mr. Sliz gave careful consideration to Petitioner's potential defenses and had valid reasons for not pursuing the "voluntary intoxication and temporary insanity defenses. Mr. Sliz considered Petitioner's contention that an interaction of alcohol and prescription drugs might show that Petitioner "may have not been in [his] right mind" at the time of the incident, but witnesses who saw Petitioner that evening described him as calm, under control, and "doing everything normally." (Id. at 35.) Accordingly, Mr. Sliz concluded that the intoxication defense was not viable because the eyewitness accounts suggested "a contrived, intentional act" rather than "something that just happened as a result of any alcohol and drug interaction." (Id. at 35-36.) In addition, Petitioner had previously mixed prescription medicine with wine or beer "on occasion," so "[Mr. Sliz] didn't know how [he] could show this was some sudden delusional act if in fact that was a normal course of conduct." (Id. at 36.)

Moreover, Mr. Sliz reviewed a psychological evaluation of Petitioner by a "Dr. Frye," but he did not think its results were sufficient to raise a defense, particularly as "there was a tone in this report of underlying anger and hostility that did not bode well for using that as a defensive tool."[2] (Doc. no. 8-2, p. 62.) Mr. Sliz also soundly rejected Petitioner's proffered defense that his ex-wife, the victim, "staged" the crime scene, concluding it was "rubbish." (Id. at 44.)

Petitioner has presented nothing to suggest that the state habeas court's analysis, in light of its unchallenged and amply supported factual findings, was contrary to Strickland or

[2]Petitioner submitted a copy of this psychological evaluation, prepared by Joseph Frey, III, Ph.D, a licensed psychologist. (See doc. no. 6.)

an objectively unreasonable application thereof. Rather, Mr. Sliz's decision to advise Petitioner to plead guilty was based on a thorough review of the case which led him to conclude that Petitioner's proffered defenses were not factually or legally viable. Accordingly, Petitioner's contention with respect to Mr. Sliz's purported failure to secure testimony and evidence in support of his proffered defenses does not warrant federal habeas relief.

### (ii)     Misrepresentation of Terms of Plea Agreement

Mr. Sliz negotiated a plea agreement where Petitioner would receive a sentence of twenty years, but would only have to serve between five and ten years imprisonment. (Doc. no. 8-2, pp. 17, 92-93, 109-18.) Petitioner alleges that Mr. Sliz misrepresented the terms of his plea agreement, causing his plea to be "unintelligent." (Doc. no. 1, p. 6.) The state habeas court concluded, however, that Mr. Sliz accurately "conveyed the plea agreement to Petitioner, and did not promise him he would only receive 5 years to serve," and the court did not credit any testimony to the contrary. (Doc. no. 8-3, pp. 5, 12.)

While Petitioner repeatedly asserted Mr. Sliz told him that he would receive a "ten-year-do-five sentence" and elicited testimony from his own son to this effect, Mr. Sliz steadfastly denied making such a representation. (Doc. no. 8-2, pp. 17, 19-21, 28.) Indeed, Petitioner proffered a letter from Mr. Sliz, dated December 28, 2009, clearly providing that Petitioner "would receive a sentence of twenty years to serve a maximum of 10 years incarceration, with credit for time served, and a minimum of 5 years incarceration with credit for time served as a Negotiated Plea." (Id. at 92.) The letter also provided that "[i]f you receive 10 years you will probably serve a total of 5-7 years with credit for time served." (Id. at 93.) As Mr. Sliz observed at the hearing, the letter "says exactly what we agreed to," and

Petitioner's assertions to the contrary were based on his attempts to "totally misread all of the documents." (Id. at 21, 28.)

Petitioner continues to baldly assert that Mr. Sliz assured him he would receive a "10 yr. do 5 yr." sentence, (doc. no. 1, p. 6), but he has presented nothing to suggest the state habeas court made an unreasonable determination of the facts in light of the evidence presented during the state habeas proceedings, nor has he presented clear and convincing evidence to rebut the presumption of correctness afforded the court's factual findings. Therefore, Petitioner's contention with respect to Mr. Sliz's purported misrepresentation of this plea agreement does not warrant federal habeas relief.

(iii)     Coercion of Guilty Plea: Speedy Trial and Venue Change

Finally, Petitioner alleges that Mr. Sliz coerced his guilty plea by failing to seek a speedy trial or a venue change. (Doc. no. 1, p. 6.) The state habeas court concluded that Mr. Sliz "did not coerce Petitioner's plea; he encouraged him to accept the bargain because it was the best he could get." (Doc. no. 8-3, p. 12.) There is ample support for this conclusion.

Petitioner and Mr. Sliz discussed the alleged "political connections" of Petitioner's ex-wife and Petitioner's concerns that he could not receive a fair trial due to these "connections." (Doc. no. 8-2, pp. 15-16.) Mr. Sliz did not seek a change of venue, however, because he believed, based on consulting with several other lawyers he knew in the Augusta area, that the defense would "get a fair shake" from the presiding judge. (Id. at 22-23.) Mr. Sliz concluded based on the facts of the case, however, including the charge of aggravated assault on police officers, that Petitioner would not receive a lower sentence if he went to trial and that doing so "would be suicide." (Id. at 27-29.) Specifically, Mr. Sliz believed that if Petitioner had gone to trial he would have been sentenced to in excess of fifty years' imprisonment. (Id. at

14

48.) Because Petitioner has presented nothing to suggest that the state habeas court's analysis, in light of its unchallenged and well-supported factual findings, was contrary to <u>Strickland</u> or an objectively unreasonable application thereof, Petitioner's contention with respect to Mr. Sliz's purported coercion of his guilty plea does not warrant federal habeas relief.

> **3.    The State Habeas Court's Decision to Reject the Ineffective Assistance of Counsel Claims with Respect to Mr. Gilliard Is Entitled to Deference under AEDPA.**

Petitioner claims in subsections (c) and (e) of Ground One that Mr. Gilliard was ineffective for failing to secure witness testimony and medical records that would have supported his defense. (Doc. no. 1, p. 5.) The state habeas court determined, based on its application of the principles set forth in <u>Strickland</u>, that Petitioner failed to show either deficient performance or prejudice with respect to Mr. Gilliard's representation. (Doc. no. 8-3, p. 11.) Because Petitioner has failed to carry his heavy burden of showing entitlement to federal habeas relief based on the state habeas court's adjudication of these claims, federal habeas relief is not warranted.

First, with respect to Petitioner's allegations that Mr. Gilliard failed to secure witness testimony and medical records, the state habeas court concluded that Petitioner was utterly unsuccessful in identifying and proffering any specific evidence Mr. Gilliard failed to secure that would have ultimately changed Petitioner's decision to plead guilty, and that Petitioner thus failed to meet his burden under <u>Strickland</u>. (Doc. no. 8-3, p. 11.) Indeed, at the state habeas evidentiary hearing, Mr. Benjamin H. Pierman, the Assistant Attorney General, explained that the state did not subpoena Mr. Gilliard because Mr. Sliz was counsel of record at Petitioner's guilty plea and sentencing hearings. (Doc. no. 8-2, p. 4.) Petitioner was thus afforded sixty days after the hearing to submit a "deposition on interrogatories" to Mr. Gilliard

and file it with the state habeas court. (Id. at 89-90.) Petitioner, however, filed a "motion to continue with habeas corpus proceedings without receiving testimony from attorney Gilliard" shortly after the hearing. (Doc. no. 8-3, p. 2.) The state habeas court thus observed that Petitioner did not utilize his opportunity to obtain evidence and testimony from Mr. Gilliard, which contributed to his failure to meet his burden under Strickland. (Id. at 11.)

Second, Petitioner has still not, in his federal petition, identified any favorable evidence that Mr. Gilliard failed to uncover, excepting only the bald assertion that Mr. Gilliard should have secured testimony and evidence showing Petitioner's "real temporary mental incapacity." (Doc. no. 7, p. 3.) However, as explained in greater detail supra, see Part III.A.2, Mr. Sliz, reviewed Petitioner's proffered defenses to the crimes alleged – that he was intoxicated or temporarily insane – and concluded that they were not viable. The state habeas court accordingly rejected this claim, and the Court has found that conclusion to be entitled to deference under § 2254.[3]

**B.    Petitioner's Claim Regarding the Purported Defects in His State Habeas Proceedings Does Not State a Cognizable Basis for Federal Habeas Relief.**

In Ground Three of his federal petition, Petitioner argues that he was denied a full and fair state habeas evidentiary hearing because Mr. Gilliard and other witnesses were not

---

[3]Petitioner submitted new evidence regarding his allegations, including purported letters he received from Mr. Gilliard, an affidavit from his sister, and an Internet news article about Mr. Gilliard. (See doc. no. 5-1, pp. 1-6; doc. nos. 15, 18.) As noted above, however, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court will not consider newly submitted evidence in support of Petitioner's ineffective assistance claims which were adjudicated by the state habeas court on the merits.

subpoenaed or present at the hearing[4] and because he was not provided transcripts of the plea and sentencing before the habeas hearing. (Doc. no. 1, p. 8; doc. no. 5, pp. 12-14.) As Respondent correctly observes, (see doc. no. 4-1, p. 7), "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); see also Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that claim premised on alleged errors by state habeas court "[went] to issues unrelated to the cause of petitioner's detention," and thus "[did] not state a basis for habeas relief"). Because the claim in Ground Three does not allege a defect in Petitioner's conviction or sentence, it is not cognizable in the instant § 2254 action, and Petitioner is not entitled to relief on that claim.

### C. Petitioner Waived His Illegal Search and Seizure Claim By Entering a Knowing and Voluntary Guilty Plea.

Petitioner alleges in Ground Four that his home was subject to an illegal search and evidence was illegally seized, and "staged, incriminating scenes (pictures) were falsely fabricated, intentionally creating false evidence." (Doc. no. 1, p. 9.) As explained below, Petitioner waived the claim in Ground Four because it alleges a nonjurisdictional defect that occurred prior to entry of his knowing and voluntary guilty plea.

### 1. A Knowing and Voluntary Guilty Plea Severely Limits Available Challenges to a Conviction in Collateral Proceedings.

Because Petitioner is attempting to challenge a conviction entered pursuant to a guilty plea, the range of claims he may press in a federal petition is quite limited:

---

[4]As noted above, however, Petitioner forewent his opportunity to present Mr. Gilliard's testimony to the state habeas court after the hearing through a deposition by interrogatories.

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989).

Stated otherwise, a guilty plea severely restricts challenges to a conviction which do not go to the validity of the plea itself. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); see also United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### 2. Ample Evidence Support the State Habeas Court's Conclusion that Petitioner's Guilty Plea Was Knowing and Voluntary.

A plea of guilty constitutes a waiver of several basic constitutional rights, including the right to a trial by jury, the privilege against self-incrimination, and the right to confront one's accusers. See Boykin v. Alabama, 395 U.S. 238, 243 & n.5 (1969). In Boykin, the Supreme Court held that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. See id. at 242-43. A guilty plea "is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses

18

to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991).

The state habeas court concluded that Petitioner knowingly, intelligently, and voluntarily pled guilty because (1) he had an understanding of the nature of the charges and the consequences of his plea; (2) he was informed of and waived his rights, including the privilege against compulsory self-incrimination, to a jury trial, and to confront witnesses against him; and (3) he was not coerced into pleading guilty. (Doc. no. 8-3, pp. 14-15.) The state habeas court's conclusion is supported by the record and is consistent with controlling precedent.

Mr. Sliz advised Petitioner that by entering the guilty plea he would waive his rights to a jury trial, to confront the witnesses against him, and against self-incrimination.[5] (Doc. no. 8-2, pp. 63-64.) He felt Petitioner could get a fair trial, but advised Petitioner to plead guilty because he had a small chance of success at trial, as well as because of his health and the nature of his crimes. (Id. at 22.) At Petitioner's guilty plea hearing, the court confirmed that Petitioner was not under the influence and reviewed the charges in the plea agreement with Petitioner to make sure he knew them. (Id. at 111-12.) The court asked whether "anyone promised [Petitioner] anything or threatened [him] in any way to get [him] to enter these pleas," to which Petitioner answered, "No, sir." (Id. at 112.) The prosecutor also reiterated before the judge accepted the plea that the sentence under the plea agreement was "a

---

[5]Mr. Sliz also reviewed a form with Petitioner where he acknowledged the waiver of his rights and stated that he was not promised anything or threatened to induce the plea, that he fully understood the charges, that his lawyer had explained the charges to him, and that he understood that by pleading guilty he was waiving his rights to a jury trial, to confront witnesses against him, and against self-incrimination. (Doc. no. 8-2, pp. 65, 100-04.)

mandatory minimum of five years with a maximum in prison of ten years, and the total sentence altogether would be 20." (Id. at 116.) Petitioner affirmed his understanding of the charges, the potential penalties each carried, and the waiver of his rights, and the court accepted the plea as freely, voluntarily, knowingly, and intelligently given. (Id. at 111-17.)

Moreover, Petitioner stated in the waiver of rights form and to the trial court during the plea colloquy that he had not been coerced or threatened into pleading guilty, and never informed the court at the guilty plea hearing that he was pleading guilty because he did not believe he could get a fair trial. (Doc. no. 8-3, p. 15.) Relying on Blackledge v. Allison, 431 U.S. 63, 74 (1977), the state habeas court did not credit Petitioner's allegations that he was compelled to plead guilty. (Id.) This is consistent with the holding in Blackledge, where the Supreme Court provided that

> the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

431 U.S. at 73-74.

Petitioner fails to cast any doubt upon the state habeas court's conclusion that his guilty plea was knowing and voluntary. The state habeas court's finding that Petitioner's guilty plea was knowing and voluntary is consistent with the evidence and was neither contrary to nor an unreasonable application of federal law.

### 3. Petitioner Waived the Claim in Ground Four by Knowingly and Voluntarily Pleading Guilty.

As Petitioner's claim in Ground Four presents allegations of a nonjurisdictional defect

that occurred prior to the entry of his guilty plea, Petitioner waived this claim by entering a knowing and voluntary guilty plea, and it must accordingly fail. See Tollett, 411 U.S. at 267; see also Franklin v. United States, 589 F.2d 192, 194-95 (5th Cir. 1979)[6] (claims regarding "illegal searches and seizures" were "not jurisdictional in nature" and were waived by entry of valid guilty plea).

### D. Petitioner's Remaining Ineffective Assistance of Counsel Claims Are Procedurally Defaulted, and Thus Fail to Provide a Basis for Federal Habeas Relief.

In subsections (a), (b), and (d) of Ground One, Petitioner contends that Mr. Gilliard provided ineffective assistance of counsel by failing to meet with Petitioner before he was interrogated by law enforcement, by failing to be present at that interrogation, and by failing to secure a bond for Petitioner. (Doc. no. 1, p. 5.) Petitioner also vaguely alleges in subsection (a) of Ground Two that Mr. Sliz provided ineffective assistance when he "allied" with Mr. Gilliard, who had been "fired." (Id. at 8.) As explained below, Petitioner failed to assert these specific claims in his state habeas proceedings, and he has now procedurally defaulted those claims.

### 1. A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state

---

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1353-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).[7]

A petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. See McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). For example, a federal habeas petitioner cannot attempt to bring a new claim in his federal habeas petition that would be procedurally barred if he attempted to raise it in state court. To that end, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in

---

[7]But see Martinez v. Ryan, 132 S. Ct. 1309, 1318 (U.S. 2012) and Trevino v. Thaler, 133 S. Ct. 1911, 1921 (U.S. 2013). These cases, however, do not apply in this instance.

federal habeas proceedings against claims never presented in state court . . . ."). As a result of the foregoing, Petitioner has procedurally defaulted any claims asserted in his federal petition that he could have asserted, but did not, in his original Georgia state habeas petition.

### 2. The Ineffective Assistance of Counsel Claims Asserted in Grounds 1(a), (b), and (d) and Ground 2(a) Are Procedurally Defaulted.

While Petitioner raised several claims of ineffective assistance of counsel regarding Mr. Gilliard and Mr. Sliz in his state habeas petition, he did not level the allegations presented in subsections (a), (b), or (d) of Ground One or subsection (a) of Ground Two. Because these claims were not raised in the original state habeas petition, state remedies are no longer available to Petitioner on these claims. See O.C.G.A. § 9-14-51; Chambers, 150 F.3d at 1327.

While there are circumstances when the Court can consider a claim despite its defaulted status, no such circumstances exist here. "A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Id. (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 132 S. Ct. 912, 922 (U.S. 2012) (internal quotation marks omitted). The narrow fundamental miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496 (1986).

23

Because Petitioner has presented no justification for failing to properly raise these claims in state court – let alone something that is external to him that cannot be fairly attributed to him – he has failed to demonstrate the cause and prejudice necessary to overcome his procedural default of these claims. Neither has Petitioner shown that a miscarriage of justice will occur if the Court does not consider these claims.[8] Accordingly, the Court concludes that the claims in subsections (a), (b) and (d) of Ground One and subsection (a) of Ground Two have been defaulted and provide no basis for federal habeas relief.

## E. Petitioner's Motion for Additional Supporting Evidence

Petitioner also submitted a Motion for Additional Supporting Evidence, in which he purports to identify various alleged constitutional errors related to his guilty plea and sentencing. (See generally doc. no. 14.) To the extent Petitioner merely identifies parts of the transcript he believes are relevant to the claims in his original § 2254 petition, such as his claim that he was misinformed about the sentence he would receive under his plea agreement, this

---

[8]In particular, Petitioner cannot show prejudice or a miscarriage of justice because none of the defaulted claims appear to have any merit. Petitioner's knowing and voluntary guilty plea waived the claims in subsections (a), (b), and (d) of Ground One because they purport to address nonjurisdictional, pre-plea issues, i.e., issues related to Petitioner's interrogation by law enforcement and bond eligibility. See Tollett, 411 U.S. at 267. To the extent the claim in subsection (d) regarding the failure to secure bond could be read as a claim that Petitioner was somehow coerced into pleading guilty, such a claim is directly refuted by Petitioner's sworn testimony at the guilty plea hearing that he was not threatened or coerced into pleading guilty, (see doc. no. 8-2, p. 112). Petitioner's mis-characterization of the testimony of Mr. Sliz at the state habeas hearing (see doc. no. 2, ,p. 4), does not change the actual testimony or the contrary conclusion to be drawn therefrom, i.e., the nature of the crimes and concern for the victim made bond unlikely, (see doc. no. 8-2, pp. 42-43). Lastly, Petitioner utterly fails to offer any explanation as to how Mr. Sliz and Mr. Gilliard working together constituted deficient performance or prejudiced him in any way. See Strickland, 466 U.S. at 688, 694.

motion is moot. However, Petitioner also attempts to assert the following new claims of ineffective assistance of counsel against Mr. Sliz in this motion:

(1) during the plea hearing, for failing to object or have the firearm charge dismissed based on the assistant District Attorney's "use" of a "Derringer" during the guilty plea hearing when Petitioner was charged and sentenced for using a ".22 caliber rifle";

(2) during the sentencing hearing:

(a) for allowing the court to "bring up a[n] accusation and have it arraigned";

(b) for allowing a banishment to be imposed as part of Petitioner's sentence, which Petitioner asserts was not part of the plea agreement; and

(c) for allowing Petitioner to be sentenced even though the judge did not advise Petitioner of his right to a jury trial or to withdraw his guilty plea.

(Id. at 3, 5, 6, 7.)[9] The Court thus construes the motion as a motion to amend his § 2254 petition.

Federal Rule of Civil Procedure 15, which governs amendment of pleadings, is applicable to § 2254 petitions. See Mayle v. Felix, 545 U.S. 644, 655 (2005). Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend. Specifically, Rule 15(a)(1) provides that:

A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

If a party is not entitled to amend as a matter right under Rule 15(a)(1), then "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.

_____

[9]Petitioner also submitted several "briefs" in support of these allegations. (See doc. nos. 16, 17, 19.)

R. Civ. P. 15(a)(2). Because Petitioner's motion to amend was filed more than 21 days after Respondent's answer to his original § 2254 petition, he cannot amend as a matter of right under Rule 15(a)(1). Therefore, the Court will proceed to determine whether his four proposed amendments should be allowed under Rule 15(a)(2).[10]

As a general rule, leave to amend under Rule 15(a) is given freely. Foman v. Davis, 371 U.S. 178, 182 (1962). That said, leave to amend is not guaranteed, and the decision of whether to grant a motion to amend is within the sound discretion of the trial court. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. Unit A July 1981). "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Local 472, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Ind. v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982) (quoting Foman, 371 U.S. at 182).

An amendment is futile when the pleading that it seeks to amend would still be subject to dismissal if the amendment were permitted. See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'" (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007))). In accordance with this principle, where the proposed amendment contains claims that would be procedurally defaulted and the petitioner has not shown cause and prejudice to excuse the default or satisfied the miscarriage of justice exception, a district court may properly deny leave to amend as futile. See Moore-El v. Luebbers, 446 F.3d 890, 901-03 (8th Cir.), cert. denied, 549 U.S. 1059 (2006); see also Smith

---

[10]Respondent has not consented in writing to Petitioner's attempt to amend his petition.

v. Tucker, 4:09CV47-RH/WCS, 2011 WL 5873066, at *1 (N.D. Fla. Oct. 24, 2011) (denying leave to amend when proposed claim was both untimely and defaulted), *adopted by* 2011 WL 5873046 (N.D. Fla. Nov. 23, 2011).

Applying the procedural default principles stated supra, Part III.D, Petitioner failed to raise any of the claims in his motion before the state habeas court and state remedies are thus no longer available to him on those claims. See O.C.G.A. § 9-14-51; Chambers, 150 F.3d at 1327. Moreover, Petitioner has presented no justification for failing to properly raise these claims in state court, and he has therefore failed to demonstrate the cause and prejudice necessary to overcome his procedural default of these claims. Petitioner has also failed to show that a miscarriage of justice will occur if the Court does not consider these claims. Petitioner's motion to amend would thus be futile on this basis alone. See Coventry First, LLC, 605 F.3d at 870; Moore-El, 446 F.3d at 901-03.

Even if they were not defaulted, however, amendment to add these claims would still be futile because they lack merit under the ineffective assistance of counsel principles stated supra, Part III.A.1, Petitioner first contends that Mr. Sliz was ineffective for failing to object or have the "gun charge dismissed" based on the assistant District Attorney's "use" of a "Derringer" during the guilty plea hearing even though Petitioner was charged and sentenced for using a ".22 caliber rifle." (Doc. no. 14, p. 3.) While the assistant District Attorney, Ms. Dana Wolk, did at one point refer to the firearm Petitioner was charged with possessing as a "derringer" during the guilty plea hearing, the judge then asked Petitioner whether he had a possessed a ".22 caliber rifle during the commission of an aggravated assault," as was charged in the accusation, and Petitioner answered, "Yes, sir." (Doc. no. 8-2, pp. 98, 115.) Accordingly, Petitioner fails to show that he was prejudiced by Mr. Sliz's failure to take action

based on Ms. Wolk's misstatement, which had no apparent effect on the proceeding. See Hill, 474 U.S. at 59.

Petitioner also contends that Mr. Sliz was ineffective for allowing the court to "bring up a[n] accusation and have it arraigned" during his sentencing. (Doc. no. 14, pp. 5-6.) The record reflects that Petitioner signed Accusation No. 2010CR0163 on February 9, 2010, the same date as his sentencing, so it appears that a new accusation was prepared before the sentencing hearing to reflect the reduced charges to which Petitioner was pleading. (See doc. no. 8-2, pp. 99, 128.) Petitioner has failed to show how he suffered any prejudice from counsel's alleged failure to prevent the arraignment on the new accusation during the sentencing hearing. See Strickland, 466 U.S. at 694.

Petitioner next asserts that Mr. Sliz was ineffective for allowing a banishment to be imposed as part of Petitioner's sentence, which Petitioner now asserts was not part of the plea agreement. (Doc. no. 14, p. 6.) According to the December 2009 letter Petitioner received from Mr. Sliz about the plea agreement, however, which *Petitioner* submitted into evidence at his state habeas evidentiary hearing, "[a]dditional terms" of his plea agreement included "banishment from Richmond and Columbia Counties." (Doc. no. 8-2, p. 92.) Petitioner thus fails to show any prejudice with respect to Mr. Sliz and the imposition of the banishment term. See Strickland, 466 U.S. at 694.

Finally, Petitioner contends that Mr. Sliz was ineffective for allowing the judge at his sentencing hearing to sentence him "after he dicided (sic) not too (sic) accept" the negotiated plea, but without advising Petitioner of his right to trial by jury and to withdraw his guilty plea.

(Doc. no. 14, pp. 6-7.) Regardless of what occurred at *sentencing*, Petitioner can show no prejudice because the judge presiding over Petitioner's entry of a guilty plea clearly advised him of his right to a jury trial, and that he was waiving that right, *before* he entered his guilty plea, (doc. no. 8-2, p. 113). See Hill, 474 U.S. at 59.

As for Petitioner's assertion that he should have been advised of his right to withdraw his guilty plea, Petitioner relies on Rule 33.10 of the Uniform Superior Court Rules of Georgia, which provides that "[i]f the trial court *intends to reject the plea agreement*," it must "inform the defendant personally that . . . the defendant may then withdraw his or her guilty plea as a matter of right."[11] However, the rule is inapplicable here, as Petitioner's assertion that the trial court rejected the plea agreement is erroneous: the trial court accepted the negotiated plea. (See doc. no. 8-2, pp. 111-18.) Accordingly, to the extent Petitioner contends that counsel was ineffective for failing to take any action when the judge did not inform Petitioner of his right to withdraw his guilty plea, he fails to show either deficient performance or prejudice because the judge was under no obligation to do so. See Strickland, 466 U.S. at 688, 694.

Therefore, Petitioner's motion to amend should be **DENIED** for futility. See Coventry First, LLC, 605 F.3d at 870.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's Motion for Additional Supporting Evidence be **DENIED**, (doc. no. 14), that his

---

[11]Indeed, Mr. Sliz informed Petitioner of this in his December 28, 2009 letter: "If the Judge were to deviate from the negotiated plea, we would have a right to withdraw our plea and have a trial on all issues." (Doc. no. 8-2, p. 93.)

§ 2254 petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 19th day of August, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE